**The ASGROW SEED COMPANY,
Plaintiff,**

**v.**

**Denny WINTERBOER and Becky
Winterboer d/b/a Deebee's,
Defendants.**

**Civ. No. C91–4013.**

United States District Court,
N.D. Iowa, W.D.

Sept. 30, 1991.

On Motion For Clarification Nov. 14, 1991.

Lawrence C. Maxwell, Trabue and Sturdivant, Nashville, Tenn., and Bruce Stein, Upjohn Co., Kalamazoo, Mich., for plaintiff.

William H. Bode, William H. Bode Associates, Washington, D.C., and Daryl L. Hecht, Crary, Huff, Raby, Inkster, Hecht and Sheehan, P.C., Sioux City, Iowa, for defendants.

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the court pursuant to both parties' motions for summary judgment. After careful consideration of the oral and written arguments this court sustains the plaintiff's motion and denies the defendants' motion.

### FACTS

This is an action under the Plant Varieties Protection Act ("PVPA" or the "Act"). *See,* 7 U.S.C. §§ 2321–2582. In order to avail oneself of the protection of the Act, the developer of a novel plant variety[1] must apply to the Plant Variety Protection office for a Certificate of Plant Variety Protection. 7 U.S.C. § 2482. A certificate grants the breeder the right to exclude others from "selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or using it in producing ... a hybrid or different variety therefrom ..." 7 U.S.C. § 2483(a). The protection lasts for 18 years. 7 U.S.C. § 2483(b).

This action was brought by Asgrow Seed Company against Dennis and Becky Winterboer. The Winterboers are family farmers in Clay County, near Milford, Iowa. The Winterboers have incorporated under the name D–Double–U Corporation, and do business under the name DeeBee's Feed and Seed. Asgrow is a subsidiary of Upjohn, and is in the business of developing agricultural seed and selling it to farmers.

Plaintiff alleges that the defendants engage in "brown-bagging." This refers to a process in which a farmer purchases seed from a company engaged in the development of plant seed. They then plant the seed, harvest it, clean it, and place it in non-descriptive brown bags for sale. Hence the term "brown-bagging."

In December of 1990, Asgrow through an agent, Mr. Ness, went to the Winterboer farm to purchase soybeans. Mr. Winterboer informed Mr. Ness that he had soybean seed for sale that was just like Asgrow varieties A1937 and A2234. Mr. Winterboer called his "just-like" varieties 1938 and 2235. Mr. Ness purchased 20 bags of 1938 and 20 bags of 2235. Asgrow took the seeds purchased from the Winterboers to Dr. Matson, Ph.D., a plant biologist employed by Asgrow, who performed tests on the seed. Dr. Matson determined that the seed tested was Asgrow A1937 and A2234.

Asgrow sought an injunction based on the PVPA to prohibit the Winterboers from selling this seed. After two hearings before this court the parties agreed to enter into an injunction. The injunction provided that the defendant would not sell any seed for the 1991 planting season. No representations were made to this court concerning the actions defendants would take with regard to seed for the 1992 crop year.

Asgrow alleges that the defendants' activities which infringe Asgrow's PVPA certificates are:

1. Unauthorized selling. *See,* 7 U.S.C. § 2541(1).

2. Sexually multiplying the varieties as a step in marketing the varieties. *See,* 7 U.S.C. § 2541(3).

3. Dispensing in a form which can be propagated without notice as to being a protected variety under which

---

1. A novel variety is defined in 7 U.S.C. § 2401(a) as a variety whose essential and distinctive characteristics will remain unchanged when sexually reproduced.

it was received. *See,* 7 U.S.C. § 2541(6).[2]

## DISCUSSION

It is an infringement of the rights of the owner of a novel variety to perform any of the following acts without the owner's authorization:

(1) sell the novel variety, or offer it or expose it for sale, deliver it, ship it, consign it, exchange it, or solicit an offer to buy it, or any other transfer of title or possession of it;

. . . . .

(3) sexually multiply the novel variety as a step in marketing (for growing purposes) the variety; or

. . . . .

(6) dispense the novel variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received;

. . . . .

7 U.S.C. § 2541.

 Defendants do not dispute that Asgrow was the owner of a novel variety protected by the Act, nor do they dispute, for purposes of this motion, that they had sold the progeny of the novel variety. However, they argue that they are exempt from the operation of § 2541 by the "farmer exception" provided in 7 U.S.C. § 2543. This section provides that no infringement occurs if:

... a person, whose primary farming occupation is the growing of crops for sale for other than reproductive purposes ... [sells] such saved seed to other persons so engaged, for reproductive purposes, provided such sale is in compliance with such State laws governing the sale of seed as may be applicable.

7 U.S.C. § 2543. Defendants allege that virtually all of their crops (almost 80%) are sold for other than reproductive purposes, thus they fall within the exception. They also claim, in direct conflict with the plain-

tiff's allegation, that they have complied with state law.

Plaintiff alleges that the defendants' actions do not fall within the farmers' exemption contained in the PVPA. The farmers' exemption provides:

Except to the extent that such action may constitute an infringement under subsection (3) and (4) of section 2541 of this title, it shall not infringe any right hereunder for a person to save seed produced by him from seed obtained, or descended from seed obtained, by authority of the owner of the variety for seeding purposes and use such saved seed in the production of a crop for use on his farm, or for sale as provided in this section: *Provided,* That without regard to the provisions of section 2541(3) of this title it shall not infringe any right hereunder for a person, whose primary farming occupation is the growing of crops for sale for other than reproductive purposes, to sell such saved seed to other persons so engaged, for reproductive purposes, provided such sale is in compliance with such State laws governing the sale of seed as may be applicable. A bona fide sale in channels usual for such other purposes, of seed obtained by authority of the owner for seeding purposes or from seed produced by descent on such farm from seed obtained by authority of the owner for seeding purposes shall not constitute an infringement. A purchaser who diverts seed from such channels to seeding purposes shall be deemed to have notice under section 2567 of this title that his actions constitute an infringement.

7 U.S.C. § 2543 (emphasis in original). Plaintiff alleges that the exception limits the amount of seed that can be saved as the amount necessary for seeding purposes. Plaintiff alleges this is the proper definition to give the phrase "saved seed."

The duty of this court is to determine and give effect to the intent of Congress. In *Ozawa v. U.S.,* 260 U.S. 178, 43 S.Ct. 65,

---

**2.** This court interprets this language to require that if a farmer does sell saved seed to another

farmer he must label it as a protected variety.

67 L.Ed. 199 (1922), the U.S. Supreme Court held:

> It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result, plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail. [citations omitted].

*Id.* at 194, 43 S.Ct. at 67. It is therefore necessary for this court to interpret the statute in a manner which will dictate that the intent of Congress in enacting the PVPA will be accomplished.

Although the legislative history, and thus Congressional intent, on the PVPA is limited, at least one circuit court has determined that Congress intended to create a narrow exemption when creating the farmer exemption. In *Delta and Pine Land Company v. People Gin Company*, 694 F.2d 1012 (5th Cir.1983), the Fifth Circuit held:

> In purpose and operation, the farmer exemption appears to be at odds with the primary purpose of the Act. While the main body of the Act assures developers of novel varieties the exclusive right to sell and reproduce that variety, the crop exemption dilutes that exclusivity by allowing individual farmers to sell the protected variety without liability. *The broader the construction given the exemption, the smaller the incentive for breeders to invest the substantial time and effort necessary to develop new strains.* The less time and effort that is invested, the smaller the chance of discovering superior agricultural products. If less time and effort is invested, long-term benefits to the farmer in the form of superior crops and higher yields will be lost. Although it may appear that the broadest reading of the exemption would benefit farmers today, it could be detrimental to their interest tomorrow.

> *Thus, the narrower reading of the exemption is more in keeping with Congress' primary objective.* Such a reading creates the greatest amount of internal harmony in the overall statutory scheme. [citations omitted]. We therefore conclude that *Congress did not intend for the crop exemption to cover every sale from one farmer to another.*

*Id.* at 1016 (emphasis supplied). In the above quoted *Delta and Pine Land Company* case, the court also held that the farmer exception required that sales be made directly from farmer to farmer, thereby prohibiting the use of a middleman to facilitate the sale, despite the fact that the Act contained no such limiting language. *Id.* at 1017. *Delta and Pine Land Company* did not limit the quantity of seed that could be sold in farmer to farmer sales as this court is now doing.

■ In 7 U.S.C. § 2543 Congress specifically protected the historical and traditional right of small farmers like the Winterboers to make seed sales to fellow farmers. However, the intent of Congress in enacting the PVPA was not to give a farmer an unrestricted right to sell seed. *See, Delta and Pine Land Company* at 1016 ("the crop exception was not intended to provide farmers with unlimited insulation from the negative side effects of the Act"). If so, Congress would have not included the phrase "saved seed" in the code section. The inclusion of the modifier "saved" in describing the amount of "seed" a farmer is allowed to sell indicates a clear congressional intent to place limits on the amount of seed a farmer can sell to other farmers under the Act.

The language of the statute is that, "it shall not infringe any right hereunder for a person *to save seed produced by him … for seeding purposes* and use such saved seed in the production of a crop for use on his farm, or for sale as provided in this section …" Reading the statute as a whole, and giving effect to the intent of Congress, this court concludes that the intent of Congress in enacting this section was to allow a farmer to save seed for his planned seeding purposes. The exception

allows a farmer to save, at a maximum, an amount of seed necessary to plant his soybean acreage for the subsequent crop year. For example, if a farmer raised 500 acres of soybeans, had farmed a total of 1000 tillable acres in that crop year, but could reasonably expect to plant a total of 1500 acres of the protected variety in the subsequent crop year, the maximum amount of seed that could be classified as "saved seed" would be 1500 bushels.[3] A farmer would be limited to saving a combined total of 1500 bushels of the current year's crop. This would allow a farmer to sell the seed not actually planted if market conditions necessitated a change in planting plans.

Although this interpretation of "saved seed" restricts the number of bushel farmers will be able to sell to one another, this court is convinced that the purpose of Congress in enacting the PVPA was to protect the developer of a new line of seed and to allow a farmer to sell the prodigy of the novel variety as limited in the example set out above. This court is aware that a Congressman who was instrumental in the passage of the Act expressed the opinion that a developer would be the only one who could sell the novel seed. As was stated by Rep. Poage:

> I do not think there is any doubt that it [enactment of the PVPA] will mean if somebody produces a seed that gives better results than anybody else's seed, and *if he is the only one who can sell that seed*, then he will get more for it.... This is the only way we know to get people to invest their time and money.... So in the long run we believe

there will be beneficial results for the producers and farmers.

116 Cong.Rec. 40,295–40,303, 40295 (daily ed. Dec. 8, 1970) (emphasis supplied). In a nutshell the defendants' position is that "we can sell all the novel variety that we have grown so long as we sell it to other farmers and follow state law." To allow such an expansive reading of the exception as the defendants espouse would dictate that the owner of the novel variety would not be the only one that could sell the seed. Clearly the intent in enacting the PVPA was to encourage companies to develop improved varieties of seed and to provide for these developers the right to protect this product from unauthorized sales by others. To allow the defendants to sell virtually unlimited amounts of the plaintiff's novel line of seed would lead to a result contrary to the intent of the statute.[4]

This court is aware that placing limits on the amount of seed a farmer may sell to another farmer, rather than merely placing limits on the manner in which the sales may be made, as was done in *Delta and Pine Land Company v. People Gin Company, supra,* is a restrictive reading of the exception. However, this court is convinced that the intent of Congress in enacting the statute was to give farmers more choices, make American agricultural products more competitive in world markets, and thereby ultimately get superior products more resistant to disease and infestation and higher in overall yield and quality, and to assure the developers of novel varieties of sexually reproduced plants the exclusive right to sell, reproduce, import, or

---

**3.** This assumes that soybeans will be planted at the rate of one bushel per acre. This court realizes that allowing a farmer to save an amount of seed reasonably necessary to plant the next years crop may lead to situations where courts will be required to determine what amount of seed is reasonably necessary to plant the next year's crop. However, determining if a person's primary occupation is farming is also a factual question which needs to be determined on an *ad hoc* basis.

**4.** This court realizes that the language "whose primary farming occupation is the growing of crops for sale for other than reproductive purposes" contained in 7 U.S.C. § 2543 may be construed by some as the limiting language in

the statute. However, this language would still allow a person qualifying for the exception to sell approximately 40 times the amount of soybean seed bought from the developer of the novel variety. This assumption is logically deduced from the fact that one planted bushel of soybeans yields approximately 40 bushels of soybeans. *See, Plaintiff's Statement of Undisputed Facts,* ex. B. Such sales, if conducted by enough sellers, would dilute or completely eliminate any market for the developer of the novel variety. Such results would lead to decreased spending in the area of research and development. In the long run this would lead to detrimental results to producers and farmers.

export such varieties. *See, 1970 U.S. Code Cong. & Admin.News*, 5082, 5082–83. Such an intent is thwarted when a developer's sales of such seed is diluted by the lower priced sales by those who have contributed nothing to the development of the novel variety.

### CONCLUSION

Saved seed shall be limited to the amount of the protected seed reasonably needed by the farmer who grew it to plant the number of acres of the protected variety, or its progeny, he or she needs in the upcoming crop year. Accordingly, this is the limit that a person qualifying for the "farmer exception" can save for planting and/or sale. Since defendants admittedly have sold much more than this amount of seed, their actions are violations of 7 U.S.C. § 2541(1), and (3). The defendants will not be permitted to continue selling seed in the method commonly referred to as "brown bagging."[5]

*Accordingly, it is ordered,*

1. Plaintiff's motion for summary judgment is sustained.

2. The plaintiff's request for a permanent injunction is sustained. The defendants are hereby enjoined from selling seed, except for saved seed, to other farmers and/or engaging in any form of "brown bagging."

3. Defendants' motion for summary judgment is denied.

4. A separate proceeding shall be held at the court's earliest convenience to determine damages in this matter. Both parties shall file briefs addressing 7 U.S.C. § 2567 and its potential effect on the amount of damages that could be awarded in this action.

### ON MOTION FOR CLARIFICATION

Plaintiff's timely motion for a clarification of this court's order of September 30, 1991 brings this matter before the court.

After consideration of the written arguments the court finds that a clarification is warranted.

In the motion to clarify, plaintiff points out that a reading of the courts order, as a whole, reveals that footnote 2 and footnote 5 could arguably be read as being in conflict. In footnote 2 the court stated that:

> This court interprets this language [7 U.S.C. § 2541(6)] to require that if a farmer does sell saved seed to another farmer he must label it as a protected variety.

In footnote 5 the court stated:

> This court has ruled that the defendants violated the Plant Varieties Protection Act because most of their extensive sales, 10,000 bushels, do not fall within the farmer exception. This court will not rule on the allegations that the defendants violated the Iowa labeling law, thereby resulting in a violation of 7 U.S.C. § 2541(6), because such a determination is not necessary to a determination of liability.

After careful review the court agrees with the plaintiff. Plaintiff argues that the court's use of the word "thereby" in footnote 5 could be construed as meaning that there is no violation of 7 U.S.C. § 2541(6) unless state labeling law is violated. As set out in the body of the order the court found a violation of the Federal Act and concluded that a determination of the alleged violation of the labeling requirement was not necessary.

The court now determines that through oversight, an error, as contemplated by Federal Rule of Civil Procedure 60(a), has been made which should be corrected. The said correction does not alter in any way the matter now on appeal. Therefore, footnote 5 on page 10 of this court's order of September 30, 1991 is stricken and the following shall be substituted in lieu thereof:

> [Editor's Note—Substitution made in the published opinion.]

**5.** This court has ruled that the defendants violated the Plant Varieties Protection Act because most of their extensive sales, 10,000 bushels, do not fall within the farmer exception. This court

will not rule on the allegations that the defendants violated the Iowa labeling law, because such a determination is not necessary to decide the issue of liability.

In short, what the court was deciding in the order was that the question of any violation of the labeling portion of the Plant Variety Protection Act need not be addressed, as a violation was found under other sections.

IT IS SO ORDERED.