**ASGROW SEED COMPANY,**
**Plaintiff–Appellee,**

v.

**Denny WINTERBOER and Becky**
**Winterboer, d/b/a Deebee's,**
**Defendants–Appellants.**

No. 92–1048.

United States Court of Appeals,
Federal Circuit.

Dec. 21, 1992.

Rehearing Denied; Suggestion for
Rehearing In Banc Declined
March 25, 1993.*

* See 1993 WL 84941.

Gary Jay Kushner and Mark D. Dopp, Hogan & Hartson, Washington, DC, were on the brief, for amicus curiae, American Seed Trade Ass'n, Northrup King Co., Dole Fresh Vegetables, Inc. and Bud Antle, Inc. and The Agrigenetics Co.

Richard L. Stanley and John F. Lynch, Arnold, White & Durkee, Houston, TX, were on the brief, for amicus curiae, Jacob Hartz Seed Co., Inc. With them on the brief was Mark F. Wachter, Monsanto Co., St. Louis, MO, of counsel.

Michael Joseph Roth, Des Moines, IA, was on the brief, for amicus curiae, Pioneer Hi–Bred Intern., Inc.

Jerome C. Hafter and Marian S. Alexander, Lake, Tindall, Hunger & Thackston, Greenville, MS, were on the brief, for amicus curiae, Delta and Pine Land Co. With them on the brief was E. Anthony Figg, Rothwell, Figg, Ernst & Kurz, Washington, DC, of counsel.

Bruce Stein, The UpJohn Co., Kalamazoo, MI, argued, for plaintiff-appellee. With him on the brief were Lawrence C. Maxwell and Mary Ellen Morris, Trabue, Sturdivant & Dewitt, Nashville, TN. Also on the brief were Robert A. Armitage and Sidney B. Williams, Jr., The UpJohn Co., Kalamazoo, MI, of counsel.

William H. Bode, William H. Bode & Associates, Washington, DC, argued, for defendants-appellants. With him on the brief was Robert A. Jaffe.

Constantine L. Trela, Sidley & Austin, Chicago, IL, was on the brief, for amicus curiae, DeKalb Plant Genetics. With her on the brief was Gina E. Brock. Also on the brief was Douglas Fisher, DeKalb Plant Genetics, DeKalb, IL, of counsel.

William Dennis Cross and Scott T. Forland, Morrison & Hecker, of Kansas City, MO, were on the brief, for amicus curiae, Agripro Biosciences, Inc.

Robert J. Jondle and Jeffrey L. Ihnen, Venable, Beatjer, Howard & Civiletti, Washington, DC, were on the brief, for amicus curiae, Golden Harvest Seeds, Inc.

Martin R. Glick and Todd E. Thompson, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA, were on the brief, for amicus curiae, Tanimura & Antle, Inc.

Stanley D. Schlosser, Foley & Lardner, Alexandria, VA, was on the brief, for amicus curiae, Stoneville Pedigreed Seed Co. With him on the brief was Patricia D. Granados, of counsel.

Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

RADER, Circuit Judge.

Dennis and Becky Winterboer appeal a permanent injunction and order granting Asgrow Seed Company's motion for summary judgment. The United States District Court for the Northern District of Iowa held that 7 U.S.C. § 2543 (1988) (the crop exemption) of the Plant Variety Protection Act (PVPA or Act) quantitatively limits a farmer's sale of PVPA seed to the amount of seed necessary to grow another crop (ensuing crop limitation). *Asgrow Seed Co. v. Winterboer*, 795 F.Supp. 915, 22 USPQ2d 1937 (N.D.Iowa 1991). Because the district court misinterpreted the PVPA crop exemption, this court reverses and remands.

## BACKGROUND

The PVPA, 7 U.S.C. §§ 2321–2582 (1988), protects novel varieties of sexually reproduced seed, transplants, and plants. This protection extends to distinct, uniform, and stable new seed varieties. 7 U.S.C. § 2401. The developer of a novel variety obtains protection by acquiring a certificate of protection from the Plant Variety Protection Office. 7 U.S.C. §§ 2421, 2422, 2481–2483. A PVPA certificate grants the breeder the right to exclude others from "selling the variety, or offering it for sale, or reproducing it, or importing it, or exporting it, or using it in producing ... a hybrid or different variety therefrom." 7 U.S.C. § 2483(a). PVPA protection lasts for 18 years. 7 U.S.C. § 2483(b). The PVPA provides remedies for infringement of exclusive rights under the Act. 7 U.S.C. §§ 2541, 2561.

Asgrow, a subsidiary of The Upjohn Company, develops novel varieties and sells them to farmers. Asgrow has obtained PVPA protection for two novel soybean seed varieties, A1937 and A2243.

The Winterboers own and operate a farm in Clay County, Iowa. The Winterboers grow corn and soybeans. The Winterboers sell soybean crops for food and feed. In addition, the Winterboers sell harvested soybean seed to other farmers who, in turn, use the seed to plant future crops.

Often farmers place harvested planting seed in plain brown bags for sale to other farmers. Therefore, "brown bag sales" refers to the sale of harvested seed from one farmer to another for planting future crops. The Winterboers engaged in brown bag sales by selling novel varieties A1937 and A2243 to other farmers.

Asgrow brought this infringement action against the Winterboers seeking damages and a permanent injunction. Asgrow seeks to enjoin the Winterboers' sale of seed harvested from crops grown with novel varieties A1937 and A2243. Asgrow alleges that the Winterboers' brown bag sales infringe its PVPA rights. The Winterboers admit selling brown bag seed harvested from Asgrow's novel varieties. However, the Winterboers deny all liability, alleging that their sales fit within the PVPA's crop exemption. 7 U.S.C. § 2543.

The district court conducted evidentiary hearings in March 1991. Both parties moved for summary judgment. On September 30, 1991, the district court granted Asgrow's summary judgment motion and issued a permanent injunction against the Winterboers.

## DISCUSSION

■ This court has exclusive jurisdiction over appeals involving the PVPA. 28 U.S.C. §§ 1295(a)(1), 1338 (1988). This court reviews the district court's grant of summary judgment *de novo*. *National Cable Television Ass'n v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir.1991). The statutory interpretation of the PVPA crop exemption, 7 U.S.C. § 2543, is a case of first impression for this court.

The PVPA grants patent-like protection for sexually reproduced plants.[1] The Act explains its purpose:

It is the intent of Congress to provide the indicated protection for new varieties by exercise of any constitutional power needed for that end, so as to afford adequate encouragement for research, and for marketing when appropriate, to yield for the public the benefits of new varieties. Constitutional clauses 3 and 8 of article I, section 8 are both relied upon.

7 U.S.C. § 2581. Thus, the 1970 Act provides exclusive rights for a term of eighteen years to encourage the development and marketing of novel plant varieties, thereby promoting the progress of agriculture. *See* H.R.Rep. No. 1605, 91st Cong., 2d Sess. 1–3 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5082, 5082–84; S.Rep. No. 1138, 91st Cong., 2d Sess. 1 (1970). The

---

1. In 1930, forty years before enactment of the PVPA, the Plant Patent Act became law. 35 U.S.C. §§ 161–164 (1988). The Plant Patent Act provides patent protection to novel varieties of "non-sexually" reproduced plants. The 1970 Act, therefore, protects "sexually" reproduced plants, while the 1930 Act protects "non-sexually" reproduced plants. *See Diamond v. Chakrabarty,* 447 U.S. 303, 313, 100 S.Ct. 2204, 2210, 65 L.Ed.2d 144 (1980).

Act provides incentives for seed companies to increase their research and development of novel seed varieties. *See* H.R.Rep. No. 91–1605 at 1. The PVPA's exclusive rights provide those incentives for innovation.

To enforce PVPA exclusive rights, the 1970 Act provided a remedy for infringement. Infringement is the unauthorized practice of a right granted exclusively to the PVPA certificate holder. 7 U.S.C. § 2541. Among other activities, the unauthorized sale of seed harvested from crops grown with novel varieties is infringement. 7 U.S.C. § 2541.

The crop exemption, however, provides a limited exemption from section 2541. Under specified circumstances, farmers may save and sell seed harvested from crops grown from PVPA seed. This lengthy and complex provision has several important clauses:

> *Except to the extent that such action may constitute an infringement under subsections (3) and (4) of section 2541 of this title . . . .*

7 U.S.C. § 2543 (emphasis added).

Section 2541 defines infringement. Section 2543's introductory clause thus states that the crop exemption does not exempt a farmer from liability for two forms of infringement: sexually multiplying the novel variety as a step in marketing, or using the novel variety in producing (as distinguished from developing) a hybrid or different variety. *See* 7 U.S.C. § 2541(3) and (4). A farmer within the crop exemption remains exempt from the other acts of infringement, including selling the novel variety, offering it for sale, or dispensing the novel variety to another without notice of PVPA protection. *See* 7 U.S.C. §§ 2541(1) and (6), 2543.

> *[I]t shall not infringe any right hereunder for a person to save seed produced by him from seed obtained, or descended from seed obtained, by authority of the owner of the variety for seeding purposes . . . .*

7 U.S.C. § 2543 (emphasis added).

A farmer does not infringe by saving seed harvested from a crop grown from PVPA seed. However, the farmer must have obtained that PVPA seed by authority of the PVPA certificate holder and with the intent to grow a crop.

■ This language does not limit the amount of seed a farmer can save. Under these terms, however, a farmer who purchases PVPA seed from another farmer cannot save any seed from the crop grown with brown bag seed. Purchasers of brown bag seed do not obtain the protected seed "by authority of the [PVPA certificate] owner." Thus, while an authorized purchaser of protected seed can save harvested seed under section 2543, a purchaser of protected brown bag seed cannot save any seed.

> *[A]nd use such saved seed in the production of a crop for use on his farm, or for sale as provided in this section . . . .*

7 U.S.C. § 2543 (emphasis added).

■ The crop exemption allows those farmers who may save seed to use it to produce a crop on their own farm or to sell it under limitations within the exemption. This provision thus permits, without threat of infringement, the sale of saved seed from crops grown with PVPA seed. To sell the saved seed, however, a farmer must comply with several statutory requirements.

> *Provided, That without regard to the provisions of section 2541(3) of this title it shall not infringe any right hereunder for a person, whose primary farming occupation is the growing of crops for sale for other than reproductive purposes, to sell such saved seed to other persons so engaged, for reproductive purposes . . . .*

7 U.S.C. § 2543 (emphasis added).

The exemption places further conditions on brown bag sales of saved seed from a crop grown from PVPA seed. Both the buyer and seller of brown bag seed must be farmers. Moreover, their primary farming occupation for the crops produced from a novel variety must be to grow crops for sale as food or feed, rather than to grow crops for sale as seed. The exemption does not permit brown bag sales if either the

buyer or the seller primarily grows crops from the novel variety to produce seed (for reproductive purposes). Rather both buyer and seller must primarily grow crops from the PVPA novel variety for consumption or other non-reproductive uses.

In this context, "primary" carries its customary meaning of "first in importance; chief; principal; main." *Webster's New World Dictionary,* 1069 (3d col. ed. 1988). This "primary" qualifier applies to the farming occupation of growing crops from novel seed varieties. The PVPA separately protects each novel seed variety. In addition, the various sections of the Act illustrate the rights available to specific novel varieties.

■ Indeed, the title of section 2543 is "crop exemption," not "primary farming exemption." This title and the context of the Act show that the PVPA applies this crop exemption on a crop-by-crop basis (i.e., on a "crops produced from a particular novel seed variety-by-crops produced from a particular novel seed variety" basis). The phrase "primary farming occupation is the growing of crops" applies to crops produced from a particular novel variety. Thus, buyers or sellers of brown bag seed qualify for the crop exemption only if they produce a larger crop from a protected seed for consumption (or other nonreproductive purposes) than for sale as seed.

■ Thus, to determine application of the crop exemption, a court must determine the amount of crops a farmer grows for sale to consumers and the amount of crops a farmer grows for brown bag sales to other farmers. If a farmer grows more crop from a protected seed variety for sale to consumers than for sale to other farmers for planting, that farmer qualifies under this requirement to buy or sell saved seed. The farmer who qualifies under the entirety of section 2543's requirements can then sell less than half of the crop grown from a specific novel variety as brown bag seed. A court must conduct this inquiry for each crop or variety of PVPA certified seed.

*[P]rovided such sale is in compliance with such State laws governing the sale of seed as may be applicable. A bona fide sale for other than reproductive purposes, made in channels usual for such other purposes, of seed produced on a farm either from seed obtained by authority of the owner for seeding purposes or from seed produced by descent on such farm from seed obtained by authority of the owner for seeding purposes shall not constitute an infringement. A purchaser who diverts seed from such channels to seeding purposes shall be deemed to have notice under section 2567 of this title that his actions constitute an infringement.*

7 U.S.C. § 2543 (emphasis added). The remainder of section 2543 requires compliance with applicable state laws and clarifies additional actions that may constitute infringement. 7 U.S.C. § 2543.

In sum, the section 2543 crop exemption does not give a farmer an unrestricted right to make brown bag sales of PVPA seed. Section 2543 contains the following limitations:

—a farmer remains subject to infringement under subsections 2341(3) and (4);

—a farmer may only save, use, or sell seed produced from or descended from seed obtained by authority of the PVPA certificate owner for seeding purposes;

—a farmer selling a novel variety must primarily grow crops from that seed for consumption;

—a farmer acquiring a novel variety must primarily grow crops from that seed for consumption;

—a farmer who acquires a novel variety in a brown bag sale can neither save nor sell seed harvested from that seed;

—the sale must comply with state laws; and

—a farmer cannot divert seed originally sold for consumption to planting purposes.

The legislative record accompanying the PVPA underscores the purposes of the crop exemption. The reports of the committees of both houses of Congress stated:

This section authorizes a farmer to sell the crop produced from a protected variety for other than reproductive purposes; to save seed from such crop for future use or planting on the farm; or, if his primary farming occupation is the growing of crops for sale for other than reproductive purposes, to sell such saved seed for reproductive purposes to other persons so engaged.

H.R.Rep. No. 1605, 91st Cong., 2d Sess. 11 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5082, 5093; S.Rep. No. 1138, 91st Cong., 2d Sess. 12 (1970). At no point did the legislative context for the text of the 1970 Act suggest that the crop exemption contains an ensuing crop limitation.

### Ensuing Crop Limitation

■ The district court erred in determining that the crop exemption of section 2543 contains an ensuing crop limitation on the amount of seed a farmer can save. The trial court incorrectly read the crop exemption to limit brown bag sales of novel varieties to the maximum amount of seed the selling farmer would save to plant another crop of like size. *Asgrow*, 795 F.Supp. at 919, 22 USPQ2d at 1940. In arriving at its conclusion, the district court stated:

> The language of the statute is that, "it shall not infringe any right hereunder for a person *to save seed produced by him ... for seeding purposes* and use such saved seed in the production of a crop for use on his farm, or for the sale as provided in this section."

*Asgrow*, 795 F.Supp. at 918, 22 USPQ2d at 1939. The district court determined that "for seeding purposes" modified the verb "save." The court concluded that a farmer could only "save" the amount of seed necessary for "seeding purposes" for ensuing crops.

Essentially the district court restricted the amount of saved seed a farmer may sell to other farmers to a quantity equivalent to one bushel per acre of the seed produced from a protected variety. With respect to soybean farmers such as the Winterboers, this quantity is approximately 1/45 of the farmer's total crop. The Act nowhere contains this restriction.

The district court's reading overlooks important phraseology within section 2543. In the critical passage of the district court's opinion shown above, the ellipses indicate the omission of important language necessary for a correct interpretation. Thus, the court incorrectly concluded that the phrase "for seeding purposes" modified the verb "save." Reading the entire passage without critical omissions shows that "for seeding purposes" modifies the verb "obtained," not "saved":

> [I]t shall not infringe any right hereunder for a person to save seed produced by him from seed obtained, or descended from seed obtained, by authority of the owner of the variety for seeding purposes. . . .

7 U.S.C. § 2543. Thus, section 2543 does not contain any explicit limit that a farmer can save and sell only as much seed as necessary to plant an ensuing crop.

Examining the entirety of section 2543, this court notes that the phrase "for seeding purposes" modifies the verb "obtained" in two other clauses in the section:

> A bona fide sale for other than reproductive purposes, made in channels usual for such other purposes, of seed produced on a farm either from seed *obtained by authority of the owner for seeding purposes* or from seed produced by descent on such farm from *seed obtained by authority of the owner for seeding purposes* shall not constitute an infringement.

7 U.S.C. § 2543 (emphasis added). Thus, the entire context of section 2543 shows that "for seeding purposes" does not modify "save" and create a narrow ensuing crop limitation on the crop exemption. This court recognizes that, without meaningful limitations, the crop exemption could undercut much of the PVPA's incentives. The Act, as written, however, contains no ensuing crop limitation as determined by the District Court.

In sum, section 2543 does not give farmers a blanket right to sell saved seed. Rather the crop exemption has several limitations. A farmer must meet each of these

requirements to qualify for the exemption. Because the district court granted Asgrow's motion for summary judgment based on an ensuing crop limitation in section 2543, this court must reverse. On remand, the trial court has the opportunity to develop a full record on the Winterboers' eligibility under the crop exemption.

### Section 2541(3)

Under section 2541(3), a farmer infringes the exclusive rights in protected seed by sexually multiplying the novel variety as a step in marketing (for growing purposes) the variety. In two explicit references, the Act clarifies that the crop exemption does not cover farmers who engage in conduct proscribed by subsection (3) of section 2541. Thus, although section 2543 permits farmers to make certain defined brown bag sales without the threat of infringement, section 2541(3) does not permit them to market novel varieties.

An expansive reading of the term "marketing" would swallow the entire crop exemption. The crop exemption explicitly permits farmers to make certain brown bag sales of novel varieties. Read alongside subsection (3) of section 2541, section 2543 permits direct farmer-to-farmer sales where both farmers satisfy the limits of the crop exemption. "Marketing" in the context of the PVPA means extensive or coordinated selling activities, such as advertising, using an intervening sales representative, or similar extended merchandising or retail activities. This form of marketing of sexually multiplied novel varieties violates exclusive rights under the Act, without regard to the crop exemption. On remand the trial court may again revisit and develop a full record on whether the Winterboers meet the other requirements of the Act.

### Notice

Under section 2541(6), it is infringement to:

(6) dispense the novel variety to another, in a form which can be propagated, without notice as to being a protected variety under which it was received; or....

Thus, an individual who transferred a novel variety to another without notice of the transfer of protected seed would infringe exclusive PVPA rights. Section 2543, however, exempts farmers who make limited brown bag sales from this requirement. Section 2543 states:

Except to the extent that such action may constitute an infringement under subsections (3) and (4) of section 2541 of this title, it shall not infringe any right hereunder....

Because subsection (6) is not included as an exception to the crop exemption, a qualifying sale under section 2543 remains exempt from the notice requirement. Therefore, the crop exemption exempts farmers from liability under subsection (6) (as well as subsections (1), (2), (5), (7) and (8)) of section 2541.

Once again, the limited record on appeal permits no ultimate conclusion about whether the Winterboers' sales were exempt under section 2543. If those sales were exempt, however, the notice requirement would not apply.

### CONCLUSION

This court holds that the district court erred in reading an ensuing crop limitation into the crop exemption of the PVPA. Rather the PVPA crop exemption contains the limitations set forth in the statute. Therefore, this court reverses the district court's grant of summary judgment. This action vacates the permanent injunction against the Winterboers. This court also denies Asgrow's motion to strike. This case is remanded to the district court.

### COSTS

Each party shall bear its own costs.

REVERSED AND REMANDED.

LOURIE, Circuit Judge, concurring.

I concur in the result of this case and in the panel's discussion of the limitation on saved seed which was the basis for the district court's decision.

However, I cannot join the remainder of the opinion because it attempts to characterize and interpret other parts of this complex statute that I believe are not before us and have not been briefed.