**UNISYS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 92–92T.

United States Court of Federal Claims.

Feb. 4, 1994.

Jerome B. Libin, Washington, DC, for plaintiff.

Robert J. Higgins, Washington, DC, with whom was James A. Burton, Acting Asst. Atty. Gen., for defendant.

*Opinion* [1]

WEINSTEIN, Judge.

This case is before the court on the parties' cross-motions for summary judgment (partial only as to the plaintiff). The parties dispute whether the "no diminution" rule within the regulation implementing Internal Revenue Code (I.R.C. or Code) § 952(c), 26 U.S.C. § 952(c) (1976) [2]—which limits the subpart F income of a controlled foreign corporation (CFC) that may be imputed to a U.S. stockholder to the total earnings and profits of that CFC undiminished by distributions— applies to earnings and profits calculated under a regulation promulgated to implement I.R.C. § 952(d), known as the "chain deficit rule." *See* Treas.Reg. § 1.952–1(d) (the (d) (1965) regulation). Specifically, they dispute the Internal Revenue Service's (IRS's or Service's) conclusion that, by cross-referencing Treas.Reg. § 1.952–1(c) (the (c) (1965) regulation), the chain deficit rule (the (d) regulation) incorporated the (c) regulation's no diminution rule—which provides that earnings and profits are not to be reduced by reason of its distributions.

Unisys Corporation (Unisys or the taxpayer)—the plaintiff and successor/transferee of the original taxpayer, Burroughs Corporation (Burroughs)—argues that, when calculating a distributing CFC's earnings and profits for purposes of the chain deficit rule, the no diminution rule of subparagraph (c) does not—or should not—be used if that CFC had no subpart F income during that taxable year, because this results in "double counting" of its earnings and profits. Unisys argues that, notwithstanding the literal language of the chain deficit regulation, the court must defer to the "unified agency inter-

---

1. This opinion originally was issued on September 30, 1993. The government requested publication. Therefore, the September 30 opinion is being reissued for publication, with minor revisions not affecting the substance of the decision.

2. Section references are to the I.R.C. of 1954, as codified at 26 U.S.C. (1976) and as in effect during the relevant years, 1977 through 1979.

pretation" of § 952 purportedly revealed by an IRS Revenue Ruling, Rev.Ruling 86–33, 1966–1 C.B. 287.

The government argues that the incorporation of the (c) regulation is express and that incorporation of the no diminution rule is a reasonable exercise of the Secretary of the Treasury's broad delegation of authority under I.R.C. § 952(d) to promulgate legislative regulations establishing the "manner" of implementing the statutory requirement to "properly reduce[ ]" the earnings and profits of a CFC within a chain of foreign corporations indirectly owned by a U.S. shareholder "to take into account any deficit [in earnings and profits]" of any foreign corporation within that chain. I.R.C. § 952(d). Accordingly, the defendant maintains that this court must defer to the literal language of the regulation.

Defendant also contends that Rev.Ruling 86–33 is not germane because it addresses only the question of whether a *receiving* CFC's earnings and profits must be *increased* in calculating the reduction to which it is entitled under the chain deficit rule, and does not address the issue in this case of whether a *distributing* CFC's earnings and profits must be *decreased* in computing the chain deficit ratio used to calculate the reduction.

After oral argument, for the reasons discussed below, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion.

### Factual Background

The parties have stipulated to the following facts for purposes of their cross-motions:

Unisys is the successor and transferee of Burroughs Corporation. Burroughs filed consolidated federal income tax returns for itself and the members of its affiliated group for 1977, 1978, and 1979, the years at issue. During that period, Burroughs manufactured, marketed, and serviced a variety of products used to record, store, compute, process, and communicate data in the United States and, through its subsidiaries, abroad.

One of the foreign corporations that taxpayer Burroughs indirectly owned during the years at issue was Burroughs International S.A. (BISA). (BISA was a wholly-owned subsidiary of another member of the Burroughs affiliated group, Europe–Africa, Inc. (BEA), a domestic corporation wholly owned by Burroughs.) During the years at issue, BISA owned one hundred percent of Societe Anonyme Burroughs (France), Burroughs Italiana Spa (Italy), Industrias Mexicanas (Mexico), Burroughs Compania Anonima (Venezuela), and Burroughs Datenverarbeitung GmbH (Austria); and fifty-eight percent of Compagnie Belge Burroughs (Belgium). During 1979, BISA also owned one hundred percent of Burroughs Europe–Africa, Ltd. (U.K.).

It is undisputed that, for purposes of § 952(d), BISA and these seven foreign subsidiaries formed a "chain of foreign corporations" for the years at issue (the BISA chain) and that BISA and each subsidiary was a CFC. Burroughs reported substantial amounts of subpart F income attributable to BISA during the years at issue. With respect to the other members of the BISA chain during the years at issue, Burroughs reported subpart F income only from the Venezuelan subsidiary ($22,098, in 1978), and the French subsidiary ($120, in 1979). None of the other subsidiaries had subpart F income during the years at issue.

During those years, the following distributions to BISA were made by the chain members:

| | |
|---|---|
| Distributions from subsidiaries to BISA in 1977: | |
| Societe Anonyme Burroughs | $2,025,611 |
| Distributions from subsidiaries to BISA in 1978: | |
| Societe Anonyme Burroughs | $2,092,537 |
| Burroughs Compania Anonima | 673,715 |
| Burroughs Datenverarbeitung GmbH | 25,000 |
| Distributions from subsidiaries to BISA in 1979: | |
| Societe Anonyme Burroughs (consent dividend) | $8,272,154 |

The earnings and profits of each chain member in these taxable years, without reduction for any distributions *or* as a consequence of applying the chain deficit rule to that member, were:

Unreduced earnings and profits
for 1977 (deficit):

| | |
|---|---|
| BISA | $11,277,861 |
| Societe Anonyme Burroughs | 5,669,462 |
| Burroughs Italiana Spa | (569,100) |
| Industrias Mexicanas | 1,100,493 |
| Burroughs Compania Anonima | 2,417,436 |
| Compagnie Belge Burroughs (BISA's 58% share) | (1,602,218) |
| Burroughs Datenverarbeitung GmbH | 23,044 |

Unreduced earnings and profits
for 1978 (deficit):

| | |
|---|---|
| BISA | $17,717,634 |
| Societe Anonyme Burroughs | 2,726,404 |
| Burroughs Italiana Spa | 1,890,041 |
| Industrias Mexicanas | 909,245 |
| Burroughs Compania Anonima | 1,467,161 |
| Compagnie Belge Burroughs (BISA's 58% share) | (531,011) |
| Burroughs Datenverarbeitung GmbH | 11,589 |

Unreduced earnings and profits
for 1979 (deficit):

| | |
|---|---|
| BISA | $25,147,776 |
| Societe Anonyme Burroughs | 6,725,244 |
| Burroughs Italiana Spa | 355,040 |
| Industrias Mexicanas | 1,206,636 |
| Burroughs Compania Anonima | (7,893,404) |
| Burroughs Datenverarbeitung GmbH | (696,669) |
| Compagnie Belge Burroughs (BISA's 58% share) | 775,986 |
| Burroughs Europe–Africa, Ltd. | 116,635 |

Burroughs's original returns initially reflected the following amounts of subpart F income attributable to the chain members (prior to reduction by the chain deficit rule) during the years at issue:

| | |
|---|---|
| Pre-limitation subpart F income in 1977: BISA | $11,293,792 |
| Pre-limitation subpart F income in 1978: BISA | $17,667,162 |
| Burroughs Compania Anonima | 22,098 |
| Pre-limitation subpart F income in 1979: BISA | $25,195,565 |
| Societe Anonyme Burroughs | 120 |

In calculating the reduction of BISA's subpart F income pursuant to I.R.C. § 952(c) and (d) for the years at issue, Burroughs *reduced* the earnings and profits of the subsidiaries for purposes of the deficit ratio by the amount of the distributions by the French subsidiary in 1977 and 1978 and by $3,247,906 of its $8,272,154 in distributions in 1979; by the full amount of the Venezuelan

**3.** It is not clear why Burroughs did not reduce the earnings and profits of the French and Austrian subsidiaries by the full amount of its distribution to BISA in each year.

subsidiary's distribution in 1978; and by $17,582 of the Austrian subsidiary's $25,000 distribution in 1978.[3]

Upon audit, the IRS *included* the distributions set out above[4] in the earnings and profits of the distributing companies for the purpose of calculating the deficit ratio used in determining BISA's share of the deficit under the chain deficit rule, and thus limited the amount by which BISA could reduce its earnings and profits pursuant to I.R.C. § 952(c).

The IRS Appeals Office, upon Burroughs's protest and appeal, agreed that these distributions must be included as earnings and profits of the distributing companies in calculating the ratio established by the chain deficit regulation.

The amounts of BISA's subpart F income, as calculated by the IRS and Burroughs, of the difference between those amounts, was as follows:

| | IRS calculation: | Taxpayer's calculation: | Difference: |
|---|---|---|---|
| 1977 | $10,082,651 | $ 9,951,520 | $131,131 |
| 1978 | $17,337,073 | $17,288,898 | $ 48,175 |
| 1979 | $18,854,793 | $18,197,154 | $657,639 |

Unisys has paid all taxes and interest assessed against its predecessor, Burroughs, with respect to the taxable years 1977, 1978, and 1979.

Unisys and the IRS entered into agreements pursuant to § 6501(c)(4) extending through December 31, 1987 the period during which income tax could be assessed for each of the taxable years at issue, and, pursuant to § 6511(c)(1), through June 30, 1988 the period for filing refund claims.

On January 4, 1988, the IRS received Unisys's refund claims for the years at issue. By letter dated February 7, 1990, it denied the claims. Unisys's complaint in this court was filed on February 6, 1992, and claimed refunds in the following amounts:

**4.** Actually, the agents altered the figures slightly, for reasons not before the court. As stated below, however, the Appeals Office did use the amounts set out above.

| | Add'l tax assessed | Interest assessed | Total paid & now claimed |
|---|---|---|---|
| 1977 | $ 31,939 | $ 0 | $ 31,939 |
| 1978 | 9,388 | 0 | 9,388 |
| 1979 | 71,959 | 170,102 | 242,061 |
| Total | $113,286 | $170,102 | $283,388 |

### The Statutory Framework

I.R.C. § 951(a)(1)(A)(i)[5] mandates that a U.S. shareholder include in gross income his pro rata share of any subpart F income of a CFC that is imputed to him by virtue of his ownership of stock in that CFC. Actual distributions to a U.S. shareholder that are attributable to subpart F income are deemed to be from previously taxed income and

5. I.R.C. § 951(a) provides:

(a) Amounts included
(1) In general—If a foreign corporation is a controlled foreign corporation for an uninterrupted period of 30 days or more during any taxable year, every person who is a United States shareholder (as defined in subsection (b)) of such corporation and who owns (within the meaning of section 958(a)) stock in such corporation on the last day, in such year, on which such corporation is a controlled foreign corporation *shall include in his gross income,* for his taxable year in which or with which such taxable year of the corporation ends—
(A) the sum of—
(i) his pro rata share (determined under paragraph (2)) of the corporation's subpart F income for such year,
(ii) his pro rata share (determined under section 955(a)(3) as in effect before the Tax Reduction Act of 1975) of the corporation's previously excluded subpart F income withdrawn from investment in less developed countries for such year, and
(iii) his pro rata share (determined under section 955(a)(3)) of the corporation's previously excluded subpart F income withdrawn from foreign base company shipping operations for such year; and
(B) his pro rata share (determined under section 956(a)(2)) of the corporation's increase in earnings invested in United States property for such year (but only to the extent not excluded from gross income under section 959(a)(2)).
26 U.S.C. § 951(a) (1976) (emphasis added).

6. 26 U.S.C. § 959(a) provides (in pertinent part):

(a) Exclusion from gross income of United States persons— ... [T]he earnings and profits for a taxable year of a foreign corporation attributable to amounts which are, or have been, included in [ ] gross income ... shall not, when—
(1) such amounts are distributed to, or

therefore are not taxed again when received. I.R.C. § 959(a).[6] I.R.C. § 959(b) similarly protects against double-counting of taxable income when a CFC's earnings and profits are distributed within a chain of ownership.[7] A CFC is defined as a foreign corporation more than fifty percent of the voting stock of which is owned by a U.S. shareholder, directly, indirectly, or constructively, on any day during the taxable year. *See* I.R.C. § 957(a) (1976) (cross-referencing I.R.C. § 958). A U.S. shareholder is a person owning, directly, indirectly, or constructively, more than ten percent of the voting stock of a foreign corporation. I.R.C. § 951(b).

I.R.C. § 952 defines subpart F income. The basic rule is set out in I.R.C. § 952(a).[8]

(2) such amounts would, but for this subsection, be included ... in the gross income of, such shareholder ... be again included in the gross income....
26 U.S.C. § 959(a) (1976).

7. 26 U.S.C. § 959(b) provides (in pertinent part):

(b) Exclusion from gross income of certain foreign subsidiaries ... [T]he *earnings and profits* ... attributable to amounts ... included in the gross income ... under section 951(a) *shall not, when distributed through a chain of ownership* ... be *also included in the gross income of another controlled foreign corporation in such chain for purposes of the application of section 951(a)....*
26 U.S.C. § 959(b) (1976) (emphasis added).

8. I.R.C. 952(a) provides:

(a) In general—For purposes of this subpart, the term "subpart F income" means, in the case of any controlled foreign corporation, the sum of—
(1) the income derived from the insurance of United States risks (as determined under section 953), and
(2) the foreign base company income (as determined under section 954)[, and]
(3) an amount equal to the product of—
(A) the income of such corporation other than income which—
(i) is attributable to earnings and profits of the foreign corporation included in the gross income of a United States person under section 951 (other than by reason of this paragraph), or
(ii) is described in subsection (b), multiplied by
(B) the international boycott factor (as determined under section 999), and
(4) the sum of the amounts of any illegal bribes, kickbacks, or other payments (within the meaning of section 162(c)) paid by or on behalf of the corporation during the taxable year of the corporation directly or indirectly to

The amount of subpart F income that may be imputed with respect to a CFC is limited to the CFC's current year "earnings and profits," reduced by certain deficits in earnings and profits in prior years if these have not already been taken into account to reduce earnings and profits. I.R.C. § 952(c).[9] I.R.C. § 952(d) allows a further ("proper[ ]") reduction in the total amount of earnings and profits of a CFC that is available to be imputed to the U.S. shareholder by reason of his indirect ownership of that CFC, "to take into account" any deficit of any foreign corporation in that chain of foreign corporations in such taxable year, "in such manner as the Secretary [of the Treasury] shall prescribe by regulations."[10]

The Secretary of the Treasury subsequently promulgated regulations under both I.R.C. § 952(c) and (d). The (d) regulation (the chain deficit rule), prescribing the "manner" in which to "take into account" the deficit of a foreign corporation in a chain to reduce the earnings and profits of a CFC within the same ownership chain, establishes a formula under which the U.S. shareholder must add up his pro rata share of all the deficits of foreign corporations in that chain having a deficit and multiply that total by a ratio consisting of his pro rata share of that CFC's positive earnings and profits to the total positive earnings and profits of all CFCs includible in the chain (the deficit ratio or chain deficit ratio).[11] This yields the share of the

an official, employee, or agent in fact of a government.
26 U.S.C. § 952(a) (1976).

**9.** I.R.C. § 952(c) provides:
 (c) Limitation—For purposes of subsection (a), the subpart F income of any controlled foreign corporation for any taxable year shall not exceed the earnings and profits of such corporation for such year reduced by the amount (if any) by which—
  (1) an amount equal to—
  (A) the sum of the deficits in earnings and profits for prior taxable years beginning after December 31, 1962, plus
  (B) the sum of the deficits in earnings and profits for taxable years beginning after December 31, 1959, and before January 1, 1963 (reduced by the sum of the earnings and profits for such taxable years); exceeds
  (2) an amount equal to the sum of the earnings and profits for prior taxable years beginning after December 31, 1962, allocated to other earnings and profits under section 959(c)(3).
For purposes of the preceding sentence, any deficit in earnings and profits for any prior taxable year shall be taken into account under paragraph (1) for any taxable year only to the extent it has not been taken into account under such paragraph for any preceding taxable year to reduce earnings and profits of such preceding year.
26 U.S.C. § 952(c) (1976).

**10.** I.R.C. § 952(d) provides:
 (d) Special rule in case of indirect ownership—For purposes of subsection (c), if—
  (1) a United States shareholder owns (within the meaning of section 958(a)) stock of a foreign corporation, and by reason of such ownership owns (within the meaning of such section) stock of any other foreign corporation, and
  (2) any of such foreign corporations has a deficit in earnings and profits for the taxable

year, then the earnings and profits for the taxable year of such foreign corporation which is a controlled foreign corporation shall, with respect to such United States shareholder, be properly reduced to take into account any deficit described in paragraph (2) *in such manner as the Secretary shall prescribe by regulations.*
26 U.S.C. § 952(d) (1976) (emphasis added).

**11.** Treas.Reg. § 1.952–1(d) provides (in pertinent part):
 (d) Treatment of deficits in earnings and profits attributable to stock of other foreign corporations indirectly owned by a United States shareholder—(1) In general. For purposes of paragraph (c)(1)(ii) of this section, if—
  (i) A United States shareholder owns (within the meaning of section 958(a)) stock in two or more foreign corporations in a chain of foreign corporations (as defined in subparagraph (2)(ii) of this paragraph), and
  (ii) Any of the corporations in such chain has a deficit in earnings and profits for a taxable year beginning after December 31, 1962, then, with respect to such shareholder and only for purposes of determining the limitation on subpart F income under paragraph (c) of this section, the earnings and profits for the taxable year of each such foreign corporation which is a controlled foreign corporation shall, in accordance with the rules of subparagraph (2) of this paragraph, be reduced to take into account any deficit in earnings and profits referred to in subdivision (ii) of this subparagraph. See section 952(d).
  (2) Special rules. For purposes of this paragraph—
  (i) Applicable rules. The special rules set forth in paragraph (c)(2) of this section shall apply.
  (ii) "Chain defined." A chain of foreign corporations shall, with respect to a United States shareholder, include—

total deficit that a CFC such as BISA may subtract from its earnings and profits pursuant to I.R.C. § 952(c).

Each reference to "earnings and profits" in the (d) regulation is followed by a cross-reference to the (c) regulation, as follows: "earnings and profits (determined under paragraph (c) . . .)."[12] The initial reference to "earnings and profits" of a controlled foreign corporation in the (c) regulation, at paragraph (1), is modified by the phrase: "computed . . . without diminution by reason of any distributions made during such taxable year," *i.e.*, by the no diminution rule. Treas.Reg. § 1.952-1(c). The (c) regulation also expressly cross-references the chain def-

icit regulation. *See* Treas.Reg. § 1.952-1(c)(1)(ii).

## The Issues

Both parties agree that the current earnings and profits of the receiving corporation in a chain (such as BISA) must be increased by the amount of the distributions it receives from other CFCs within the chain. Plaintiff agrees that the (d) regulation incorporated all the requirements of the (c) regulation for purposes of calculating a controlled foreign corporation's current earnings and profits other than the no diminution clause.

Both parties agree that the numerator of the chain deficit ratio applied to a receiving

---

(a) Any foreign corporation in which such shareholder owns (within the meaning of section 958(a)(1)(A)) stock, but only to the extent of the stock so owned, and

(b) All foreign corporations in which such shareholder owns (within the meaning of section 958(a)(2)) stock, but only to the extent of the stock so owned by reason of his ownership of the stock referred to in (a) of this subdivision.

(iii) *Allocation of deficit.* If one or more foreign corporations (whether or not a controlled foreign corporation) includible in a chain of foreign corporations has a deficit in earnings and profits (determined under section 964(a) and § 1.964-1) for the taxable year, the amount of deficit taken into account under section 952(d) with respect to a United States shareholder in such chain as a reduction in earnings and profits for the taxable year of a controlled foreign corporation includible in such chain shall be an amount which bears the same ratio to such shareholder's pro rata share of the total deficit in earnings and profits for the taxable year of all includible foreign corporations as *his* pro rata share of the earnings and profits (*determined under paragraph (c) of this section but without regard to the provisions of subparagraph (1)(ii) of such paragraph*) for the taxable year of such includible controlled foreign corporation bears to his pro rata share of the total earnings and profits ( *as so determined under paragraph (c) of this section* ) for the taxable year of all includible controlled foreign corporations. The amount of deficit taken into account under this subdivision with respect to any controlled foreign corporation includible in a chain of foreign corporations shall not exceed the United States shareholder's pro rata share of the controlled foreign corporation's earnings and profits for the taxable year.

Treas.Reg. § 1.952-1(d) (1965) (as amended by the Tax Reduction Act of 1975) (emphasis added).

12. Treas.Reg. § 1.952-1(c) provides (in pertinent part):

(c) Limitation on a controlled foreign corporation's subpart F income—(1) In general. A United States shareholder's pro rata share (determined in accordance with the rules of paragraph (e) of § 1.951-1) of a controlled foreign corporation's subpart F income for any taxable year shall not exceed his pro rata share of the *earnings and profits* (as defined in section 964(a) and § 1.964-1) of such corporation for such taxable year, *computed* as of the close of such taxable year *without diminution by reason of any distributions made during such taxable year,* minus the sum of—

(i) The amount, if any, by which such shareholder's pro rata share of—

(a) The sum of such corporation's deficits in earnings and profits for prior taxable years beginning after December 31, 1962, plus

(b) The sum of such corporation's deficits in earnings and profits for taxable years beginning after December 31, 1959, and before January 1, 1963 (reduced by the sum of the earnings and profits (as so defined[ ]) of such corporation for any of such taxable years) exceeds

(c) The sum of such corporation's earnings and profits for prior taxable years beginning after December 31, 1962, which, with respect to such shareholder, are allocated to other earnings and profits under section 959(c)(3) and § 1.959-3; and

(ii) Such shareholder's pro rata share of any deficits in earnings and profits of other foreign corporations for a taxable year beginning after Dec[e]mber 31, 1962, which are attributable to stock of such other foreign corporations owned by such shareholder within the meaning of section 958(a) and *which, in accordance with section 952(d) and paragraph (d) of this section,* are taken into account as a reduction in the controlled foreign corporation's earnings and profits for such taxable year.

Treas.Reg. § 1.952-1(c) (1965) (as amended by the Tax Reduction Act of 1975) (emphasis added).

CFC includes the distributions to that receiving CFC. The government, however, contends that the distributing corporation's earnings and profits are not diminished by its distributions to the receiving CFC in calculating that ratio. Including such distributions increases the denominator of the ratio—the total of earnings and profits for all the controlled foreign corporations in the chain by the amount of the distribution. This reduces the deficit allocation ratio and, consequently, the share of the deficit that the U.S. shareholder may deduct from the earnings and profits of the receiving corporation. In other words, under the government's interpretation, the U.S. shareholder's pro rata share of the deficit is smaller and therefore his subpart F income, which is capped at the CFC's earnings and profits, is not as greatly reduced as it would be under plaintiff's interpretation.

Under the taxpayer's view, the (d) regulation should not incorporate the "without diminution" clause of the (c) regulation when the payor corporation has no subpart F income because the overall purpose of the (c) regulation is to calculate a limitation on the amount of a controlled foreign corporation's subpart F income, *i.e.,* "to preserve current earnings and profits" in order to ensure that the maximum amount of a CFC's subpart F income for the year will be reported by its U.S. shareholder.

### Summary Judgment

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rules of the United States Court of Federal Claims (RCFC) Rule 56(c).

■ The court agrees with the parties that there are no genuine issues of material fact in dispute and that this case involves solely issues of law requiring statutory and regulatory interpretation. Thus, this case is appro-

priate for resolution by summary judgment. *E.g., EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 247–48, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991); *Asgrow Seed Co. v. Winterboer,* 982 F.2d 486, 488 (Fed.Cir.1992); *petition for cert. filed,* 62 U.S.L.W. 3001 (June 23, 1993) (No. 92–2038).

### Standard of Review.

■ Courts generally defer to agency regulations interpreting a statute. *National R.R. Passenger Corp. v. Boston & Maine Corp.,* — U.S. —, ——–—, 112 S.Ct. 1394, 1401–02, 118 L.Ed.2d 52 (1992); *National Muffler Dealers Ass'n v. United States,* 440 U.S. 472, 476–77, 99 S.Ct. 1304, 1306–07, 59 L.Ed.2d 519 (1979). Greater deference is accorded to " '[an IRS] regulation issued under a specific grant of authority [to the Secretary] to define a statutory term or prescribe a method of executing a statutory provision' " than to a regulation interpreting a tax statute "only under [the Secretary's] general authority to 'prescribe all needful rules and regulations [pursuant to 26 U.S.C. § 7805(a) ].' " *United States v. Vogel Fertilizer Co.,* 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982) (quoting *Rowan Cos. v. United States,* 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981)); *see also Skinner v. Mid–Am. Pipeline Co.,* 490 U.S. 212, 221, 109 S.Ct. 1726, 1732, 104 L.Ed.2d 250 (1989) (citing Act of Mar. 3, 1791, ch. 15, § 43, 1 Stat. 209 to establish longevity of congressional practice of legislative regulations). "Where the Commissioner acts under specific authority, our primary inquiry is whether the interpretation or method is within the delegation of authority." *Rowan Cos. v. United States,* 452 U.S. at 253, 101 S.Ct. at 2292. The Secretary's interpretation of such legislative regulations also is entitled to substantial deference.[13]

■ "The role of the judiciary in cases of this sort begins and ends with assuring that

13. *Cf. Commissioner v. Portland Cement Co.,* 450 U.S. 156, 164–65, 174, 101 S.Ct. 1037, 1043, 1048, 67 L.Ed.2d 140 (1981) (upholding Commissioner's interpretation of taxpayer's "first marketable product" as "cement, whether sold in bulk or in bags," under the "proportionate profits" method where Congress delegated spe-

cific authority under the stem language of I.R.C. § 611 (1954) "that the allowance of the depletion deduction is 'in all cases to be made under regulations prescribed by the Secretary' " and where the Treasury Regulations there supported the Commissioner's position).

the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967); *accord Commissioner v. Engle*, 464 U.S. 206, 224, 104 S.Ct. 597, 608, 78 L.Ed.2d 420 (1984). If the court finds that the regulations " 'implement the congressional mandate in some reasonable manner,' " then the regulations must be upheld. *Engle*, 464 U.S. at 224, 104 S.Ct. at 608 (quoting *Correll*, 389 U.S. at 307, 88 S.Ct. at 450); *accord Cottage Sav. Ass'n v. Commissioner*, 499 U.S. 554, 560–61, 111 S.Ct. 1503, 1507–08, 113 L.Ed.2d 589 (1991).

■ A reasonable interpretation of the implementing statute is one that harmonizes with the goal of the implementing legislation. Where there are alternative interpretations, "the 'choice among reasonable interpretations is for the Commissioner, not the courts.' " *Engle*, 464 U.S. at 224, 104 S.Ct. at 608 (quoting *National Muffler Dealers Ass'n*, 440 U.S. at 488, 99 S.Ct. at 1312). "But that principle is to set the framework for judicial analysis; it does not displace it." *United States v. Cartwright*, 411 U.S. 546, 550, 93 S.Ct. 1713, 1716, 36 L.Ed.2d 528 (1973). "The framework for analysis is refined by consideration of the source of the authority to promulgate the regulation at issue." *Vogel Fertilizer Co.*, 455 U.S. at 24, 102 S.Ct. at 827. "Our starting point, of course, is the language of the statute itself." *Engle*, 464 U.S. at 214, 104 S.Ct. at 603.

*Discussion*

No case, in this or any other court, having interpreted I.R.C. § 952(c) or (d) or the no diminution and chain deficit rules in the (c) and (d) regulations, this issue is one of first impression. Nor has the IRS published any interpretation of these statutory provisions or rules, other than Revenue Ruling 86–33, which was issued in 1986, several years after

the plaintiff's returns were filed with respect to the years at issue.[14]

Plaintiff does not argue that the IRS's regulatory interpretation of the statute is unlawful, unreasonable, or in plain conflict with the statute. Rather, plaintiff makes various policy and equity arguments as to why the IRS in the (d) regulation should have excepted an in-chain distribution by a CFC having no subpart F income from the no diminution rule.

■ I.R.C. § 952(d) specifically grants the Secretary of the Treasury broad authority to promulgate regulations establishing the "manner" in which a U.S. shareholder must reduce the earnings and profits of a controlled foreign corporation to determine his share of any deficits in the chain. *See* 26 U.S.C. § 952(d), set out at note 10, *supra.* Further, the Secretary is mandated to promulgate such a regulation, the statutory rule not being self-implementing. Thus, the (d) regulation is a legislative regulation entitled to particular deference.

This court, therefore, cannot invalidate the (d) regulation on equity or policy grounds, but only if it is arbitrary or capricious or exceeds the agency's authority under § 952(d). *See Correll*, 389 U.S. at 307, 88 S.Ct. at 450.

■ The court concludes that it must defer to the literal language of the (d) regulation. There is no question that it implements the statutory requirement of formulating the "manner" in which to apply the deficits to reduce the earnings and profits of a CFC for purposes of calculating the subpart F income of a U.S. shareholder. Nor is there any question that the chain deficit rule *further reduces* earnings and profits (and thus subpart F income), *i.e.*, it reduces them below the level allowed under the (c) regulation alone.[15]

14. The court rejects defendant's contention that Example (1)(c) in Treas.Reg. § 1.952–1(c)(3) is relevant to this case, since that example does not involve a deficit. Therefore, the proper calculation and application of the *chain deficit ratio*, the issue here, was never addressed.

15. Defendant's assertion that the purpose of the (d) regulation is to apportion deficits, not to

calculate earnings and profits is incorrect, and is confusing, since the chain deficit rule in the (d) regulation is used *precisely* to reduce the earnings and profits calculation under the (c) regulation. Further, since the issue here is *precisely* the definition of *earnings and profits* under (d) and whether it is the same as the definition of *earnings and profits* in (c): "computed … with-

*"Double-counting"*

Plaintiff's contention that the deficit ratio may not "double-count" the distributed earnings of a CFC has cosmetic equitable appeal, double-counting intuitively appearing unfair. However, this court has no equitable jurisdiction to rewrite legislation, and plaintiff cites no constitutional or other legal principle that prohibits Congress from permitting such double-counting in taxing income of CFCs, whether the "double-counting" takes in calculating a ratio for reducing earnings and profits to take into account a deficit, or in allocating distributions within a chain to a U.S. shareholder for purposes of calculating a CFC's subpart F income under I.R.C. § 964.

That Congress chose, by enacting I.R.C. § 959, to exercise its discretion to *eliminate* double-counting of distributions within a chain does not establish that it was legally *required* to enact such a provision. Similarly, its delegated drafter of legislative regulations, the Commissioner, had equally broad discretion as to whether double-counting should be allowed in computing a deficit ratio, provided of course that the ratio otherwise complied with the requirements of the statute, *i.e.*, that it actually reflect the deficits within the chain and that the resulting ratio actually operate to reduce the earnings and profits of CFCs in the chain. There is no question that the chain deficit rule as literally written and as interpreted by defendant does both.

Plaintiff's "double-counting" argument suggests that double-counting of ordinary distributions within a chain (for purposes of §§ 951, 952, and 964) would occur under defendant's reading of the regulations under § 952. This is deceptive. Clearly, double-counting is *not* at issue, being precluded by § 959(b). *See also* § 952(a).

"Double-counting" clearly occurs in computing the deficit ratio under the in-chain deficit rule. However, since Congress could have provided for *no such rule* (as is clear from the fact that it later *repealed* it, by § 1221(f) of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, 2554),[16] and plaintiff has advanced no grounds for *ab initio* entitlement to *any* reduction to a receiving CFC's earnings and profits to account for *any* deficit, never mind a reduction to *fully* account for any in-chain deficit, the fact that "double-counting" may reduce such reduction is essentially irrelevant.

This is the crux of the problem. Only if every CFC having positive earnings and profits distributes *all* of these "up the chain," *and* does not diminish its earnings and prof-

---

out diminution by reason of any distributions," it is unclear why such an assertion helps defendant's argument.

16. The court rejects defendant's argument that the subsequent repeal of the chain deficit rule (as well as of the I.R.C. § 952(c) rule) by § 1221(f) of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, 2554, establishes that Congress did not intend those rules to permit a taxpayer to shelter "loss[es] ... in a non-subpart F income category or [that] bear little or no relation to the income ... offset[]." H.R. Conf.Rep. No. 841, 99th Cong., 2d Sess. II–623 (1986). Obviously, the stated purposes for the repeal, as well as the very need for repeal, acknowledge that such offsets *were* allowed under those rules. In any event, this argument is irrelevant, since the issue here is *not* whether deficits from non subpart F losses may be used by a CFC to offset its subpart F earnings and profits, but whether the deficit formula or ratio may use the no diminution rule in (c) in calculating the earnings and profits of a distributing CFC.

Defendant's repeated assertions that the IRS "arguably" could have allowed only CFC deficits or only subpart F deficits to be counted under the chain deficit regulation directly conflict with the statute, which clearly states that the deficits of any "foreign corporation" may be taken into account, rather the deficits of a *controlled* foreign corporation. (The term CFC is used elsewhere in § 952(d) to identify the members of the chain whose *earnings and profits* are to be reduced by taking into account such deficits.) Clearly, a non-CFC cannot, by definition, generate subpart F income *or* deficits. *See* I.R.C. § 952(a) ("the term 'subpart F income' means, in the case of any *[CFC]*, the sum of—") (emphasis added).

Similarly, the modified chain deficit rule enacted in 1988 "to fix the non subpart F deficit problem" has no relevance whatsoever to the no-diminution rule or to the deficit ratio, the issues in this case.

Also, subsequent legislative history is *not* legislative "history" and does not establish Congress' intent in a previous Act, even if such intent, as opposed to the meaning of the agency regulations, were at issue here. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 118–19, 100 S.Ct. 2051, 2061, 64 L.Ed.2d 766 (1980); *Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1313 n. ** (Fed.Cir.1989).

its on account of the distribution, may the receiving CFC reduce its earnings and profits by the full amount of the deficit. This may be illustrated by the following example: P is a CFC owning 100% of CFCs A, B, and C; P has subpart F earnings and profits of $1,000; A and B each have non-subpart F earnings and profits of $100; C has a deficit of $1,000; and A and B distribute all their earnings and profits to P.

Then, under plaintiff's reading that the no diminution rule does not apply, the deficit ratio for P under the chain deficit rule is ($1,000 + $100 + $100) over ($1,000 + $100 + $100), or 1. Multiplying 1 times the deficit of $1,000 yields a multiplicand of $1,000, which, subtracted from P's earnings and profits of $1,200, equals $200, resulting in the attribution of subpart F income to the U.S. shareholder of $200.

Under defendant's reading, the numerator is the same, $1,200, but the denominator is increased by $200, the amount of A's and B's distributions to P. This yields a deficit ratio of 1,200/1,400, or approximately 85.7%, and a reduction in P's earnings and profits of 85.7% of $1,000, or $857, yielding subpart F income of $343. Thus, under plaintiff's reading the $1,000 deficit is fully, dollar for dollar, utilized whereas, under defendant's reading, only a percentage of the deficit is utilized.

If, however, as in this case, P wholly owns one or more additional CFCs with positive nonsubpart F earnings and profits (for purposes of this example we shall posit one additional CFC, with positive non-subpart F earnings and profits of $100), and it does *not* make any distributions to P, the deficit ratio is reduced *below* one, even if the nondiminution rule is not applied, because P's earnings and profits—$1,000 + $100 + $100—divided by all the earnings and profits in the chain—$1,000 + $100 + $100 + $100—equals $1,200 over $1,300, or 85.7%. Thus, only 92.3% of the $1,000 deficit, or $923, may be used to reduce P's earnings and profits.

This example clearly shows that, even under plaintiff's reading of the chain deficit rule, Congress *did not*, in cases where all CFCs did not distribute all their earnings and profits to the receiving CFC, require the Secretary of the Treasury fully (by a dollar for dollar reduction) to take into account deficits within the chain in calculating that receiving CFC's earnings and profits.

There is no basis to assume that such cases are unusual or were not anticipated by Congress. Plaintiff cannot maintain that this result (less than a dollar for dollar reduction of the receiving corporation's earnings and profits) is inconsistent with the statutory mandate to take a deficit within a chain into account, because it is required, even under plaintiff's own reading of the (d) regulation as not incorporating the nondiminution rule, in every case in which, as here, all the subsidiaries in the chain do not distribute their full earnings and profits to the receiving corporation.

Thus, plaintiff's argument on these facts concedes some reduction of the deficit ratio below one is permissible under the statute. If this is so, this court cannot conclude that the somewhat *greater* reduction that results from incorporating the no diminution rule into the (d) regulation is an abuse of the Secretary's broad rulemaking authority under the plain language of I.R.C. § 952, to issue legislative regulations establishing the "manner" in which to take a deficit into account. This congressional delegation to the Secretary clearly must authorize him to decide the *extent* to which these deficits could be taken into account, and even to decide to take deficits into account in a *de minimis* manner only, by, *e.g.*, double-counting.

*Revenue Ruling 86–33.*

Plaintiff relies on Rev. Ruling 86–33 for the proposition that the Secretary *did not* intend for purposes of the ratio under the chain deficit rule to diminish a distributing corporation's earnings and profits by the amount of its distribution. However, this 1986 revenue ruling, which plaintiff did not rely upon in its 1987 refund claim, was not issued in response to a query regarding the effect of the chain deficit rule on *distributor* corporations, the issue here, but rather to a query as to its proper application to the earnings and profits of *receiving* corporations. The revenue ruling states the issue as follows:

If a controlled foreign corporation (CFC) *receives* a dividend distribution from another CFC within the same chain of foreign corporations, is the *recipient* CFC required to increase its earnings and profits for the tax year by the amount of the distribution for purposes of calculating the limitation on subpart F income under section 952(c) of the Internal Revenue Code?

Rev.Rul. 86–33, 1986–1 C.B. at 287 (emphasis added).

The specific question in Rev. Ruling 86–33 was whether a distribution by a CFC that had non-subpart F income might be excluded from the *receiving* CFC's earnings and profits for purposes of calculating the *receiving* CFC's subpart F income pursuant to the no diminution rule in the *(c)* regulation. Thus, the ruling relied, in principal part, on § 1.952–1(*c* )(3), example (1)(d), because it "illustrates that in determining the subpart F income limitation under section 952*(c)*, the earnings and profits of a CFC for the tax year include dividend distributions *received* by the CFC during the tax year from another CFC within the same chain of ownership." *Id.* at 289 (emphasis added).

The ruling also stated that the foregoing example indicated that the no diminution rule applied to distributions " '*made* during such year' " but that "earnings and profits of the CFC, nevertheless, are increased by dividends *received* from another CFC within the [ ] chain...." *Id.* (quoting Treas.Reg. § 1.952–1(c)(3), Example (1)(d)) (emphasis added). *This,* while not the deciding issue in that ruling, precisely decides the issue in this case: whether the no diminution rule applies to the distribution *maker,* the distributing CFC.

The plaintiff nonetheless argues that, even if the literal words do not, the *result* in Rev. Ruling 86–33 supports its position, because the ruling "concluded that '[p]ursuant to the chain deficit rule,' 100% of the current deficit of the third CFC was allocated to the *dividend-receiving CFC,* reducing that CFC's current earnings and profits by the full amount of the deficit." Plaintiff's Reply Brief at 4 (emphasis and internal quotation marks in the original). Therefore, "*the divi-*

*dend-paying CFC* did not attract any of its sister CFC's current deficit when the 'chain deficit' allocation rules of the '(d) regulations' were applied," but rather "the entire deficit was allocated to the *dividend-receiving CFC,*" a "result ... possible only because all of the current earnings and profits of the dividend-paying CFC *were shifted upstream* together with the dividend it paid." *Id.* (emphasis in original).

This is a gross misstatement of the outcome of the ruling, which does not hinge on reducing the earnings and profits of the receiving corporation by 100% of the deficit, rather than by a proportional amount calculated pursuant to the chain deficit nondiminution rule, nor mention excluding the distribution from the distributing company's earnings and profits when calculating the denominator of the deficit reduction ratio.

The facts of the ruling are as follows: Z wholly owns P, a CFC with 5x subpart F income and 2x non-subpart F income. Z wholly owns S1, and S2, both CFCs. S1 had non-subpart F accumulated earnings of 100x (not previously taxed) and current non-subpart F earnings of 8x, all of which were distributed to P. S2 had a current deficit of 40x. Rev.Rul. 86–33, 1986–1 C.B. at 287–88.

Therefore, P's earnings and profits are 5x + 2x + 108x, or 115x, and the chain deficit ratio, calculated *with* application of the nondiminution rule in the (d) regulation, is 115x over (115x plus 108x), or 115/223. Multiplying that ratio by the deficit of 40x yields approximately 20.63x, which reduces P's earnings and profits of 115x to 94.37x. Because P's subpart F income is only 5x, the earnings and profits limitation in I.R.C. § 952(c) clearly does not come into play, and does not reduce P's subpart F income. Thus, the full 5x must be included in the gross income of Z. Therefore, the "result" reached in Rev. Ruling 86–33 is not dependent on applying plaintiff's interpretation of the (d) regulation's nondiminution rule. *See id.* at 289–90.

Further, if the (c) regulation nondiminution rule is *not* applied to the recipient P, as was argued by the taxpayer that requested

the revenue ruling,[17] but the (d) regulation nondiminution rule at issue here *is*, the full 5x could *not* be included. That is because P's income without including the distribution from S1 is 7x; therefore, the chain deficit ratio is 7x divided by 7x + 108x, which equals approximately 6.09%. Multiplied by 40x, the deficit amount, this yields approximately 2.43x to be deducted from P's earnings and profits of 7x. 7x minus 2.43x equals approximately 4.57x. Because P's earnings and profits of 4.57x *are* less than its subpart F income of 5x, the I.R.C. § 952(c) limitation *would* apply, and the taxpayer would have to include only 4.57x in his gross income.

The foregoing clearly illustrates a basis for the result in Rev. Ruling 86–33 that is fully consistent with its limited holding that the no diminution rule in the *(c)* regulation applies to the corporation *receiving* the distribution. The result reached in the ruling also is fully consistent with defendant's arguments here and the same result clearly could be reached without adopting plaintiff's reading of the chain deficit rule.

While the same result—that 5x of subpart F income would have to be reported—might also be reached under plaintiff's theory, that fact is insufficient to establish that the literal language of the (d) regulation was an unreasonable interpretation or implementation of the statute. It also provides no support for the argument that the Commissioner's interpretation of the regulation in the revenue ruling differs from the regulation's literal language. In other words, the revenue ruling and the regulation, read together, clearly establish a "unified agency interpretation" of the chain deficit rule as fully incorporating the requirements of the (c) regulation, including the no diminution rule, the interpretation accorded deference in *Centra, Inc. v. United States*, 953 F.2d 1051, 1055 (6th Cir.1992), a case strongly relied upon by plaintiff.[18]

*Exception for CFCs with no subpart F income.*

To accept plaintiff's arguments, the court would have to read into the chain deficit rule an exception for CFCs with no subpart F income. This would be plainly inconsistent with the statute and regulations, for three principal reasons.

First, the (c) and (d) regulations do not distinguish between distributing CFCs with and without subpart F income. Rather, the focus throughout is on earnings and profits, which may include subpart F income, or non-subpart F income, or both. Even in identifying the *deficit* that is the source of the reduction to earnings and profits permitted by these regulations, Congress established that it is irrelevant whether the company providing the deficit has any subpart F income, as is clear from the fact that it provided in I.R.C. § 952(d) that the deficits need not be those of a CFC and may be those of a "foreign corporation" in a chain, which would not have subpart F income. This very failure to distinguish between companies with and without subpart F income, in fact, was a chief stimulus for the repeal of I.R.C. § 952(d) in 1986—because non-subpart F income was being sheltered by non-subpart F deficits. *See* H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–623 (1986).

Second, defining "earnings and profits" differently under the (d) regulation than under the (c) regulation, *i.e., not* to diminish distributions only in the former instance, would be unreasonable even if the (d) regulation did *not* expressly incorporate the (c) regulation's definition of "earnings and profits." The placement of the no diminution clause in the (c) regulation, immediately following "earnings and profits," evidences that the clause is

17. *See* Gen.Couns.Mem. 39,233, at 1 (May 11, 1984).

18. Given the broad authority granted to the Secretary under I.R.C. § 952(d), defendant's reliance on the definition of "dividend" in I.R.C. § 316(a) (1976) is misplaced. First, I.R.C. § 952 does not use the term "dividend." Second, I.R.C. § 316(a) does not address whether "distributions" reduce the earnings and profits of the payor in a *chain* or group of affiliated companies in the same year. Finally, even if "distributions" always *do* reduce earnings and profits in determining income, which is not at all clear, *see, e.g.,* Rev. Ruling 74–339, 1974–2 C.B. 103, 103 (redemption distributions do not reduce earnings and profits available for dividends), this would not necessarily require an agency with broad authority to fashion a deficit reduction formula or ratio to incorporate such a precept in that formula or ratio, the issue here.

part of the definition of that term in (c). Since the chain deficit calculated under the (d) regulation must be utilized to determine the amount of earnings and profits for purposes of the limitation on subpart F income under the (c) regulation, the same term in these two intimately related regulations should be read consistently. *Cf. Sorenson v. Secretary of the Treasury*, 475 U.S. 851, 860, 106 S.Ct. 1600, 1606, 89 L.Ed.2d 855 (1986) ("[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning") (internal quotation marks and citations omitted). The regulations should be given "as great an internal symmetry as [their] words permit." *Id.*

Finally, plaintiff argues that in calculating the chain deficit ratio, an exception for CFCs with no subpart F income may be implied, *not* in calculating the *numerator*—the receiving corporation's earnings and profits—which it concedes *would* include distributions of non-subpart F income—*nor* in calculating a *portion* of the *denominator*—the portion consisting of the receiving corporation's earnings and profits, as well as the portion represented by the non-subpart F earnings and profits it concededly *could* receive from other CFCs in the chain—but only in calculating the amounts of income that were distributed by CFCs without subpart F income. Again, this requires inconsistent interpretations of the same factor in different parts of the same equation. Plaintiff's desire to "have it both ways," *i.e.*, to use a non-subpart F deficit to shelter its subpart F income, but not have it weighed when the result is a slight decrease in the amount of that shelter, cannot be justified.

### Conclusion

The court concludes that the chain deficit rule unambiguously incorporated the (c) regulation definition of earnings and profits as undiminished by distributions; that the (d) regulation is a reasonable interpretation of the statute; that it is clearly within the scope of the express authority delegated by Congress to devise a chain deficit ratio establishing the "manner" in which in-chain deficits may be taken into account for purposes of reducing earnings and profits under I.R.C. § 952(c); and that the agency's interpretation of that regulation in Rev. Ruling 86–33 and in the administrative proceedings in this case [19] also is reasonable, consistent with the statute and regulation, and not inconsistent with any other interpretation of the regulation by the Commissioner. The IRS's regulation is entitled, not only to deference,[20] *see National Muffler Dealers*, 440 U.S. at 476–77, 99 S.Ct. at 1306–07, but to controlling weight. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984) (citing cases).

The clerk is ordered to enter judgment for the defendant.

---

**19.** *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157, 111 S.Ct. 1171, 1179, 113 L.Ed.2d 117 (1991) (holding that a reasonable "interpretation of the OSH Act regulations in an administrative adjudication ... *is* agency action, and not a *post hoc* rationalization," and thus is entitled to judicial deference) (emphasis in original).

**20.** See generally *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 260, 111 S.Ct. 1227, 1236, 113 L.Ed.2d 274 (1991) (Scalia, J., concurring in part) (concluding that the " 'legislative rules vs. other action' dichotomy ... is an anachronism," because, under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), deference to an agency position is due even if the agency does not have explicit rulemaking power).